UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TERRY CEDOTAL,** *ET AL.* | **CIVIL ACTION** |
| **VERSUS** | **NO. 94-1397** |
| **WHITNEY NATIONAL BANK,** *ET AL.* | **SECTION: "S"(5)** |

## ORDER AND REASONS

Before the court are cross-motions for summary judgment which will resolve a dispute regarding the retirement plan of Whitney National Bank. The magistrate judge issued a report and recommendation on November 19, 2000. Both sides appealed the magistrate judge's ruling. Numerous status conferences and painstaking attempts at settlement followed. In the process, certain stipulations have been reached, and some claims were waived.

The case was originally filed as a class action. Before certification, a stipulation was entered that any judgment as to the plaintiffs in the case will be entered with regard to every similarly situated participant of the Whitney retirement plan. It is agreed that only the following issues remain for adjudication.

    (1)    Whether certain plaintiffs are entitled to benefits under the 1984 Summary Plan Description ("SPD") which provides greater benefits than the 1984 Plan itself;

1

>   (2)   Whether either the 1987 Plan No. 1 or 1987 Plan No. 2 ever became effective;
>
>   (3)   Whether notice of the 1993 Plan was legally sufficient; and
>
>   (4)   Whether reduction of the preretirement death benefit in the 1993 Plan constituted an improper reduction under ERISA.[1]

## I.   **STANDARD OF REVIEW**

It is well established that a district court must conduct a *de novo* review of the portions of a magistrate report to which the parties object:

> A judge of the [district] court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate. The judge may also receive further evidence or recommit the matter to the magistrate with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. Proc. 72(b) ("The district court to whom the case is assigned shall make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule."). The Fifth Circuit has held that the district court has "wide discretion to consider and reconsider the magistrate judge's recommendation," and has termed review of a magistrate's findings as "open-ended." *Freeman v. County of Bexar*, 142 F.3d 848, 852 (5th Cir. 1998), *cert. denied*, 531 U.S. 933, 121 S. Ct. 318, 148 L.Ed.2d 255 (2000).

Summary judgment is appropriate only when the pleadings and summary judgment evidence establish that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23,

---

[1] The plaintiffs have waived any claims regarding the following issues: whether Cedotal and Fryou were entitled to a penalty of $100 per day because they did not receive their benefits statements timely, and whether the integration of social security in the 1993 Plan was properly applied.

106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The court must be satisfied that no reasonable trier of fact could find for the nonmoving party or, in other words, "that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in her favor." *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir.1990) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The moving party has the burden of showing that there are no genuine issues of material fact.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548; *Lavespere*, 910 F.2d at 178. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *Id.* at 325, 106 S.Ct. 2548; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994).

**II.     ANALYSIS**

Whitney first adopted a retirement plan for its employees on October 28, 1964. After that time, Whitney has amended the plan several times, including January 1, 1976 ("the 1976 Plan"), January 1, 1984 ("the 1984 Plan), March 24, 1993 (retroactive to January 1, 1987)("the 1987 Plan No. 1), 1993 plan executed by Edward Grimball ("1987 Plan No. 2"), and January 1, 1995 (effective January 1, 1993) ("1993 Plan). The issue of the validity of some of these plans as well as other issues arising under these plans have been raised by the parties.

**(1).    Whether certain plaintiffs are entitled to benefits under the 1984 Summary Plan Description ("SPD") which provides greater benefits than the 1984 Plan itself.**

The text of the most relevant stipulation as set forth in the Partial Judgment is as follows: "benefits under the version of the Whitney National Bank Retirement Plan effective as of January 1, 1984, shall be determined under the basic or minimum formulas described therein without use of the fraction described in section 1.1 thereof for those early and normal retires whose benefits commenced between July 1, 1988, and December 31, 1992." (Rec. Doc. 311). The stipulation resolved most of the issues relating to the 1984 Plan.

Plaintiffs additionally assert that the accrued benefit calculations under the 1984 Plan differ from the calculations in the 1984 Summary Plan Description ("SPD"). Both plaintiffs and defendants agree that the plan provided that the calculation of the accrued benefits is "[t]he greater of (i) the Normal Retirement Benefit, as determined under Section 4.1, as of any date, multiplied by a fraction, **not to exceed one**, the numerator of which is the Participant's total Years of Benefit Service anticipated for that Participant at his Normal Retirement Date, or, if applicable (ii) the minimum accrued benefit determined under Article 9 ."[2] On the other hand, the SPD states that "your vested accrued monthly benefit is the greater of: (i) your projected monthly normal retirement benefit, calculated under the basic Formula described on page 11 and multiplied by a fraction , the numerator of which is your total Years of Benefit Service upon your termination of your employment and the denominator of which is your total projected years of Benefit Service at your Normal Retirement Date (**not in excess of 40 years**) or (ii) your projected monthly normal retirement benefit, calculated under the Minimum Formula also described on page 11 and multiplied by a fraction, the numerator

---

[2]Section 1.1 of 1984 Plan (emphasis added).

of which is your total Years of Benefit Service upon termination of your employment and the denominator of which is your total projected Years of Benefit Service at your Normal Retirement Date."[3]

Unlike the Plan, the SPD does not limit the fraction to one. As a result, the fraction calculated under the SPD for employees with more than 40 years of service could exceed 1, making the SPD and the Plan language inconsistent. Plaintiffs contend, and Whitney does not dispute, that deleting the phrase "not to exceed one" in the SPD increases benefits to employees who have more than 40 years of service at Whitney. Plaintiffs argue that participants are entitled to have the distributed Summary Plan Description govern the calculation of their benefits if it gives a more advantageous calculation than the plan itself. The Fifth Circuit in *McCall v. Burlington Northern/Santa Fe Co.*, 237 F.3d 506, 512 (5th Cir. 2000), found that when the SPD is more favorable, the SPD is binding, and if there is a conflict between the SPD and the terms of the plan itself, the SPD controls. Following *McCall*, this Court holds that the 1984 SPD must be used in calculating benefits where it is in conflict with the actual Plan.[4]

**(2).    Whether either the 1987 Plan No. 1 or 1987 Plan No. 2 ever became effective.**

On November 16, 1992, Vici White, the benefits manager at Whitney, sent out a memorandum to Whitney employees informing them of benefit plan changes being made to Whitney's retirement plan. On November 20, 1992, White sent another memorandum to employees informing them that a meeting would be held to discuss those changes in benefits. Thereafter, in

---

[3]1984 SPD, at p. 13 (emphasis added).

[4]Defendants admit that the 1984 SPD is more beneficial to those whose employment "should terminate from some reason other than retirement, disability, or death. . . ."

1993 the Whitney Board of Directors met and adopted a resolution approving an amended retirement plan, the 1987 Plan No. 1, for all participants. Although the Board approved that plan, it was never implemented by Whitney. Instead, 45 days after the adoption of 1987 Plan No. 1, Edward Grimball, Whitney's Executive Vice President, signed and implemented 1987 Plan No.2, a plan which differed from the one adopted and approved by the Board in March 1993. Plaintiffs contend that 1987 Plan No. 1 was the only effective 1987 Plan and the White Memorandum was notice of that plan. On the contrary, defendants contend that 1987 Plan No. 2 was the only effective 1987 plan. Both plans are addressed below.

     **A.     1987 Plan No. 1.**

Plaintiffs argue that the White memorandum constitutes notice of 1987 Plan No. 1, the plan plaintiffs allege was approved by the Whitney Board in March 1993. Plaintiffs further assert that 1987 Plan No. 1 was adopted by the Whitney Board of Directors as evidenced by the Board's March 24, 1993 meeting minutes, and therefore, 1987 Plan No. 1 constitutes an amendment to 1984 Plan.[5]

According to plaintiffs, the White memorandum included benefit calculations which were distributed to employees to encourage the older employees to retire because the calculations were especially beneficial to them. Plaintiffs argue that the 1987 Plan No. 1 was an effective amendment to the 1984 Plan, and the White memorandum provided notice of that plan to all plan participants.

A portion of the meeting minutes of the Whitney Board of Directors provides:

NOW, THEREFORE, BE IT RESOLVED that this Corporation hereby adopts the Whitney

---

[5] Plaintiffs previously argued that the memorandum was an amendment to the 1984 Plan and was also a summary plan description ("SPD") of 1987 Plan No. 1. However, during oral argument, plaintiffs unambiguously rejected those previous arguments and emphatically contended that they were only arguing that the memorandum was notice to plan participants that their benefits under the 1984 Plan would change in the form of 1987 Plan No. 1.

6

> National Bank Retirement Plan, substantially in the form presented in this meeting, with such other changes as the President of this Corporation, in its sole discretion, shall deem necessary or advisable **other than changes in the benefit levels provided under the Plan** . . . . (emphasis added).

The wording of the resolution demonstrates that the Board adopted 1987 Plan No. 1 "substantially in the form presented" at the meeting, but explicitly contemplated that there would be further changes, and authorized the Whitney president to make certain additional amendments to the draft plan, other than changes in benefit levels. By explicitly providing the Whitney president with the discretion to make changes, the Board of Directors clearly and explicitly contemplated that the plan was only "substantially" complete, and was inchoate and tentative until it was finally executed.

Plaintiffs argue that the resolution of the Board of Directors is sufficient to form an amendment to the 1984 Plan. This Court acknowledges that boards' resolutions and written minutes of meetings have been held to be sufficient to amend a plan. RIA PENSION & BENEFITS LIBRARY, PENSION ANALYSIS, BOARD RESOLUTIONS AS EFFECTIVE PLAN AMENDMENT, P. 48, 420 (2007)(citing *Huber v. Casablanca, Inc.* 916 F. 3d 85, 105- 106 (3d Cir. 1990), *overruled on other grounds*). However, the language in the Board's resolution clearly indicates that it did not view the draft as being a final, definitive plan. This Court finds that 1987 Plan No. 1 was merely a draft plan, which was never finalized and thus, never became effective. Therefore, it is unnecessary to determine whether the White memorandum could have had the effect of notice of that plan.[6]

---

[6]The Court notes that the White memorandum was disseminated to plan participants on November 16, 1992 (and referred to again in a subsequent Vici White letter dated November 20, 1992), and the Board adopted 1987 Plan No. 1 months later on March 24, 1993. Plaintiffs argue that under 29 U.S.C. § 1054 (h), notice before adoption of the plan is proper. At that time § 1054 (h)(1) provided, in pertinent part:

> (h) Notice of significant reduction in benefit accruals

**B.      1987 Plan No. 2.**

On April 30, 1993, Edward B. Grimball, a Whitney Executive Vice President and its Chief Financial Officer, executed 1987 Plan No. 2, which plan contained provisions that differed from 1987 Plan No. 1, as approved by the Board.

The Board's resolution adopting 1987 Plan No. 1 gave the Whitney president restricted authority to make changes to 1987 Plan No. 1.  The resolution stated, in part:

> NOW, THEREFORE, BE IT RESOLVED that this Corporation hereby adopts the Whitney National Bank Retirement Plan, substantially in the form presented in this meeting, with such other changes as the President of this Corporation, in its sole discretion, shall deem necessary or advisable other than changes in the benefit levels provided under the Plan . . . .
>
> FURTHER RESOLVED, that R. King Milling, the President of this Corporation, or Edward B. Grimball, the Executive Vice President of this Corporation, or their duly authorized designee, are hereby authorized and empowered to take any and all action as they, in their sole discretion, shall deem necessary or advisable in order to accomplish this adoption and implementation of such Plan and Trust, including, but not limited to: (1) the submission of the Plan to the Internal Revenue Service, and (2) communication of such Plan to the employees of this Corporation, . . .

The plan executed by Grimball, 1987 Plan No. 2, went beyond the changes authorized by the resolution and reduced benefits contained in 1987 Plan No. 1.  The Defendants acknowledge that 1987 Plan No. 2 differed from Board approved 1987 Plan No. 1, but argue that even if 1987 Plan No. 2 was *ultra vires* and beyond what the Board had approved, the defendants' subsequent actions in

---

(1) A plan described in paragraph (2) may not be amended so as to provide for a significant reduction in the rate of future benefit accrual, unless, after adoption of the plan amendment and not less than 15 days before the effective date of the plan amendment, the plan administrator provides a written notice, setting forth the plan amendment and its effective date, to–

The unambiguous language of § 1054(h) provides that written notice must be provided ***after*** adoption of the plan amendment.

8

administering benefits to plan participants according to 1987 Plan No. 2 ratified that plan. Defendants cite *Halliburton Company Benefits Committee v. Graves*, 463 F. 3d 360 (5th Cir. 2006), as authority.

In *Halliburton*, two corporations, Dresser Industries, Inc. and Halliburton N.C., Inc., merged forming a new corporation and wholly owned subsidiary of Halliburton Company. *Halliburton*, 463 F. 3d at 363. Before the merger, Dresser and Halliburton, N.C. each had separate welfare benefit programs for employees and retirees. *Id*. The Dresser Retirement Medical Program, which was governed by Dresser's Plan 750, provided medical benefits that were significantly greater than the Halliburton Plan. *Id*. The two companies merged and two separate plans, the Halliburton Plan and the Dresser Plan 750, were maintained. *Id*. at 365. Less than a year after the merger, Halliburton began to amend the Dresser Plan 750, and eventually, Halliburton combined the two plans and renamed the plan the Halliburton Energy Services, Inc. Welfare Benefits Plan ("HESI Plan"). *Id*. at 367.

Thereafter, the Halliburton Benefits Committee brought a declaratory action in federal district court against participants in the Dresser Retiree Medical Program arguing that (1) the amendments to that program were permissible and did not violate the HESI Plan, the merger agreement, or ERISA and (2) the merger agreement did not limit Halliburton's right to amend or terminate the Dresser Retiree Medical Program. *Id*. at 368. After addressing the consequences of the merger agreement on the Dresser Retiree Medical Program, the Fifth Circuit addressed whether the merger agreement, as plan amendment, followed the plan procedure and whether a plan amendment could be ratified by subsequent actions of Halliburton. *Id.* at 373-74.

The court analyzed the Dresser Plan 750's procedure for proper plan amendments and found

that the plan procedure provided that the *Company* could amend the plan at any time, through a writing signed by the vice president. *Id.* Although the amendment was signed by the chairman of the board of directors and not the vice president, the court explained that the Board or its chairman could always revoke the vice president's authority, and Halliburton's past actions demonstrated that it had purported to amend the Dresser Plan 750 on more than one occasion without the vice president's signature. *Id.* at 374.

The court explained that even if the vice president's signature had been required, "Halliburton's subsequent actions served to ratify the provision ex post." *Id.* Specifically, the court found that Halliburton ratified a section of the merger agreement as an amendment to the Dresser Retiree Medical Program in at least the following two ways: (1) the shareholders of Halliburton and Dresser approved the merger agreement, ratifying the amendment to the extent that it was unauthorized; and (2) Halliburton administered its obligations under the Dresser Retiree Medical Program consistent with the provision/amendment in question. *Id.* at 375. Therefore, the court found that Halliburton's actions ratified the provision as an effective plan amendment. *Id.*

This Court declines to extend the holding of *Haliburton* to find that 1987 Plan. No. 2 was ratified by implementation where the action of Grimball exceeded the authority granted to him by the Board. The parties have not argued that 1987 Plan No. 2 is ineffective because Grimball was not the proper signatory as in *Halliburton*. In violation of the straightforward directive of the Board, Grimball executed 1987 Plan No. 2, which reduced benefits from 1987 Plan No. 1. Accordingly, this Court finds that 1987 Plan No. 2 never became effective. It is unnecessary to address the legal effect,

if any, of the White memorandum on 1987 Plan No. 2.[7]

### (**3**).     **Whether notice of the 1993 Plan was legally sufficient.**

In 1995, Whitney executed a plan with an effective date of January 1, 1993 ("the 1993 Plan"). Whitney issued notice on July 13, 1995, which was provided in compliance with 29 U.S.C. § 1054(h), within 15 days prior to the amendment of July 1, 1995.[8]  Plaintiffs do not dispute that notice was timely, but argue that the notice was insufficient  because it did not contain the correct formulas or calculations.  Plaintiffs allege that the notice informed the Plan participants that their benefits "would be changed from the current level of benefits being paid to them," referring to the level of benefits provided under the 1987 Plan No. 2.  Plaintiffs argue that because 1987 Plan No. 2 was never effective, plaintiffs could never have had their benefits legally calculated under that plan and therefore, the notice was defective.

Defendants argue that at the time that notice was issued, an exact quotation of the text of the plan amendment was not required, and the notice did not need to explain how the individual benefit of each participant would be affected by the amendment.  Defendants cite *Register v. PNC Financial Services, Group, Inc*., 477 F. 3d 56 (3d Cir. 2007), as authority.  The court in *Register* addressed whether notice of a plan amendment was improper under ERISA'a notice requirements.  *Id*. at 73.  In finding that the notice was sufficient, the Court explained that the Treasury Regulations in existence at the time of the amendment indicated that notice did not need to provide an exact

---

[7]Defendants also argue that the White memorandum has no legal effect on 1987 Plan No. 2 because plaintiffs cannot meet the test for equitable estoppel as set forth in *Mello v. Sara Lee Corporation*, 431 F. 3d 440 (5th Cir. 2005).  The Court does no reach this issue.

[8]During oral argument and in their brief, the defendants refer to this Plan as the 1995 Plan.

quotation of the text of the plan amendment nor did it need to explain how the individual benefit of each participant would be affected by the amendment. *Id*. (citing 26 C.F.R. § 1411(d)-6T(1996)). Instead, the notice could contain a summary written in a manner to be understood by the average plan participant and it needed to contain an effective date. *Id*.

As in *Register*, this Court finds that June 13, 1995 notice of the 1993 Plan was sufficient under 26 C.F.R. § 1411(d)-6T. The notice contained both the effective date and a summary sufficient to be understood by the average participant. Accordingly, this Court finds that the notice was sufficient and the 1993 Plan is the next effective plan after the 1984 Plan.

### (4). Whether reduction of the preretirement death benefit in the 1993 Plan constituted an improper reduction under ERISA.

Defendants acknowledge that the 1984 Plan provided a more generous preretirement death benefit because Whitney did not have a significant life insurance program at that time. Article 5.3 of the 1984 Plan contains the following death benefit, which is provided if a participant dies before beginning to receive normal or early retirement benefits:

> Benefits Payable in the event of Death after Termination of Employment - In the event a vested Participant dies prior to the date on which monthly benefit payments commence (without having received a lump sum payment of the Participant's vested Accrued Benefit), then the Participant's Beneficiary will receive a Death Benefit equal in value to the Actuarial Equivalent of the single-sum value of the Participant's vested Accrued Benefit as of the date of Termination of Employment.

Thereafter, in both the two invalid 1987 Plans and the 1993 Plan, Whitney reduced the preretirement death benefit to that which was required by ERISA.

Plaintiffs contend that the preretirement death benefits were accrued benefits and therefore the reduction was improper under ERISA. 29 U.S.C. § 1002(23) defines an "accrued benefit" to be "the individual's accrued benefit determined under the plan . . . expressed in the form of an annual

benefit commencing at normal retirement age."   As explained by the Fifth Circuit in *Williams v. Plumbers & Steamfitters Local 60 Pension Plan*, 48 F. 3d 923, 925 (5th Cir. 1995), ERISA's §204(g), the original statutory designation of 29 U.S.C. § 1054(g), "prohibits plan amendments that eliminate or reduce *inter alia*, retirement-type subsidies or early retirement benefits."   The legislative history of § 204(g) makes it clear that a qualified disability benefit, a medical benefit, a social security supplement, ***a death benefit*** (including life insurance), or a plan shutdown benefit (that does not continue after retirement age) will not be considered a retirement-type subsidy.  *Id*.  (emphasis added).  In addition, a preretirement death benefit does not begin at normal retirement age, but instead, commences only upon the occurrence of the specific event, *i.e*. death.

Additionally, plaintiffs argue that because their preretirement death benefits were vested, the benefit was nonforfeitable under 29 U.S.C. § 1002(19).   This provision states that:

> The term "nonforfeitable" when used with respect to a pension benefit or right means a claim obtained by a participant or his beneficiary to that part of an immediate or deferred benefit under a pension plan which arises from the participant's service, which is unconditional, and which is legally enforceable against the plan.  For purposes of this paragraph, a right to an accrued benefit derived from employer contributions shall not be treated as forfeitable merely because the plan contains a provision described in section 1053(a)(3) of this title.

"To say that a benefit is 'vested' is to say that it is nonforfeitable." STEPHEN LEASE, J.D., PENSIONS AND RETIREMENT PLANS AND BENEFITS, CJS PENSIONS § 119 (2007).  However, "only accrued benefits are entitled to the protections of nonforfeitability."  RONALD J. COOKE, 1 ERISA PRACTICE AND PROCEDURE §4:21 (2007).  "Other 'ancillary' benefits are not similarly protected, and these latter benefits may be forfeited without offending ERISA."  *Id.*

Therefore, the preretirement death benefits are ancillary or incidental benefits which are not protected and may be forfeited, making 29 U.S.C. § 1002(19) inapplicable.  The preretirement death benefit cannot vest until it is accrued, *i.e*. at the time of the participant's death.  The inference in

13

Article 5.3 of the 1984 Plan as to a "vested Participant" does not mean that the participant's death benefits are vested. Instead, it refers to the participant's vested accrued benefit, which this Court finds does not include the preretirement death benefit. Accordingly, this Court finds that the reduction of the preretirement death benefits did not violate ERISA.

## III.  CONCLUSION

Based on the above, the Court finds that the cross motions for summary judgment (Rec. Docs. 305 & 306) are **GRANTED** in part and **DENIED** in part, as follows:

(1) Where the 1984 SPD is more favorable to the participants than the 1984 Plan, the SPD controls;

(2) Neither the 1987 Plan No. 1 nor 1987 Plan No. 2 ever became effective, therefore, the Vici White Memorandum had no legal effect on either plan;

(3) Notice of the 1993 Plan was legally sufficient; and

(4) The preretirement death benefit reduction was not improper under ERISA.

New Orleans, Louisiana, this __3rd__ day of August, 2007.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**