UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

TERRY CEDOTAL, ET AL.                    CIVIL ACTION

VERSUS                                   NUMBER: 94-01397

WHITNEY NATIONAL BANK, ET AL.            SECTION: "S"(5)


### REPORT AND RECOMMENDATION


Presently before the Court is the motion by plaintiffs for attorneys' fees and costs, defendants' response thereto, and the parties' reply and supplemental memoranda. (Rec. docs. 326, 331, 335, 348). An evidentiary hearing went forward on the motion on June 18 and 19, 2009. (Rec. docs. 345, 346). Defendants filed post-hearing briefing which they later supplemented. (Rec. docs. 351, 354). Plaintiffs have not responded thereto.

Succinctly stated, plaintiffs seek attorneys' fees for 5,380.40 hours of work performed over a fifteen-year period at various hourly rates, together with a multiplier, totaling in

excess of two million dollars prior to any enhancement being applied. Additionally, reimbursement for costs in the amount of $55,605.27 is also sought. While defendants do not dispute that plaintiffs are prevailing parties, it is strenuously argued that the amounts sought are excessive and that "... plaintiffs can be entitled to attorneys' fees of not more than $497,598, paralegal fees in the amount of $16,851.25, and costs in the amount of $20,664.49."[1]/ (Rec. doc. 351, p. 2)(footnote omitted).

Although the main demand was disposed of on cross-motions for summary judgment, the legal issues involved herein were difficult and complex. The litigation involved the proper interpretation of the Whitney Bank's Retirement Plan, determining which Plan applied to which plaintiffs, and determining whether the Bank had or had not properly amended the Plan before calculating benefits. The Court notes that the Bank's interpretation of the so-called 1984 Plan had changed in mid-stream through the addition of an "accrued benefit fraction" without a formal amendment of the Plan and, therefore, benefit calculations were inconsistent. Attempts to amend the Plan occurred and issues arose as to whether those attempts were successful or not. Further issues argued by the

---

[1]/ The Court notes that defendants paid the sum of $497,144.60 to their attorneys in connection with the defense of this matter. While not specifically arguing that plaintiffs' counsel should receive no more than did defense counsel for handling the same issues, that would appear to be part of defendants' rationale in so suggesting this amount.

2

parties and dealt with by the Court are set forth in the Report and Recommendation of the undersigned dated November 16, 2000 (rec. doc. 225) and the rulings of the District Judge dated August 3 and 8, 2007. (Rec. docs. 311, 313).

As this matter was brought under ERISA, 29 U.S.C. §1001 <u>et seq</u>., the Court will adjudicate fees pursuant to the applicable statute contained within that statutory scheme, 29 U.S.C. §1332(g)(1). While some suggestion has been made that this matter should be adjudicated as a "common fund" matter, the Court sees no basis to do so. Under ERISA, the plaintiffs' recovery was limited to "benefits due" under the defendants' Plan. To adjudicate this matter as a common fund case would unfairly dilute the recovery to which the plaintiffs are entitled and there is no jurisprudence to support such a result. <u>Kickham Hanley P.C. v. Kodak Retirement Income Plan</u>, 558 F.3d 204 (2nd Cir. 2009). Nor has there been any agreement in connection with settlement or otherwise in the litigation which would cause the Court to view this as a "common fund" matter. Accordingly, the Court turns to the issue of determining the lodestar amount which is reached by quantifying the reasonable number of hours devoted to this case and multiplying that figure by a reasonable hourly rate. <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 103 S.Ct. 1933 (1983).

Defendants initially argue that, before the Court may engage in a lodestar analysis, "... time submitted by plaintiffs that is

clearly erroneous or not supported by governing law must be identified" as none of those hours are subject to recovery. (Rec. doc. 351, p. 7)(citing <u>Walker v. U.S. Department of Housing and Urban Development</u>, 99 F.3d 761, 769 (5th Cir. 1996)). As to such completely excludable hours, defendants identify seven areas of concern as follows:

1.  that plaintiffs cannot recover for claims on which they did not prevail.

2.  that Mr. Bruno's time entries reflect uncorrected software problems and other basic errors.

3.  that Mr. Bruno's time entries related to his suspension from the practice of law in this Court cannot be recovered.

4.  that time spent by the Cossich firm is also erroneous and not subject to recovery in this proceeding.

5.  that time spent on administrative proceedings is not recoverable as a matter of law.

6.  that multiple attorneys cannot be compensated for coming "up to speed" as a matter of law.

7.  that hours for support staff cannot be recovered.

(Rec. doc. 351, pp. 7-15).

The Court will address each of these arguments in the order presented above.

Defendants first argue that, pursuant to Supreme Court jurisprudence, a prevailing party entitled to fees is one who has been afforded relief pursuant to "... enforceable judgments on the merits and court-ordered consent decrees [which] create the 'material alteration of the legal relationship of the parties'

4

necessary to permit an award of attorney's fees." <u>Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources</u>, 532 U.S. 598, 604, 121 S.Ct. 1835, 1840 (2001)(internal citation omitted).  Defendants then argue that there are only two such "enforceable judgments" upon which plaintiffs' status as prevailing parties may be established.  The first of these is the judgment dated August 8, 2007 which provided:

1.    [w]here the 1984 SPD is more favorable to the participants than the 1984 Plan, the SPD controls;

2.    [n]either the 1987 Plan No. 1 nor the 1987 Plan No. 2 ever became effective;

3.    [n]otice of the 1993 Plan was legally sufficient; and

4.    [t]he reduction in the pre-retirement death benefit in the 1993 Plan did not constitute an improper reduction under ERISA.

(Rec. doc. 313).

As to each of these issues, defendants contend that plaintiffs prevailed on the first issue, neither party prevailed on the second issue, and defendants prevailed on the third and fourth.

The second judgment upon which prevailing party status may be based, according to the defense, is the partial judgment dated August 3, 2007 which provided as follows:

1.    [t]hat Partial Judgment be entered in favor of Plaintiffs against Defendants that benefits under the version of the Whitney National Bank Retirement Plan effective as of January 1, 1984, shall be determined under the basic or minimum formulas described therein without the use of the fraction described in section 12.1 thereof for those early or normal retirees whose benefits commenced between July 1, 1988 and December 31, 1992;

2.    [t]hat Plaintiffs' claim that retirement benefits under the 1993 and 1995 versions of the Whitney National Bank Retirement Plan were improperly integrated with Social Security benefits has been voluntarily withdrawn and, as such, is hereby dismissed with prejudice.

3.    [t]hat Plaintiffs', Cedotal and Fryou, claims arising under 29 U.S.C. 1132(c) have been voluntary withdrawn and, as such, are hereby dismissed with prejudice.

(Rec. doc. 311).

Defendants then argue that, in fact, plaintiffs prevailed on the first of these issues but that the defense prevailed on points two and three.

Since the defendants' initial post-hearing filing, the Supreme Court has decided the case of <u>Hardt v. Reliance Standard Life Ins. Co.</u>, _____ U.S. _____, 130 S.Ct. 2149 (2010) in which it addressed the "prevailing party" standard for attorneys' fees under ERISA. The Supreme Court modified the previous <u>Buckhannon</u> standard and found that a litigant could be a prevailing party by showing "some degree of success on the merits." <u>Hardt</u> _____ U.S. at _____, 130 S.Ct. at 2158.  The Court finds that plaintiffs herein have, indeed, established more than just "some" degree of success on the merits.  Plaintiffs' efforts resulted in settlement as noted hereinafter which is far more than "cost of defense" and further resulted in a correction and/or modification of the Bank's ERISA Plan which benefits all current employees.

Defendants nevertheless maintain that some reduction in time is appropriate because plaintiffs did not achieve 100% success on

all of their claims.  It is argued that, because the time on counsel's billing records is not broken down in such a fashion as to attribute specific time worked on claims on which plaintiffs prevailed versus claims on which they did not, a percentage reduction of hours must be utilized by the Court.  The reduction sought by defense counsel is between 30% to 50%.  Defense counsel argue that a 50% reduction is appropriate if the Court considers only the number of claims on which plaintiffs prevailed, as they prevailed on two of the seven holdings quoted above.  However, if materiality of the holdings is considered, a 30% reduction is still in order as fewer than sixty people benefitted from the ruling pertaining to the Bank's interpretation of the 1984 Plan.  By contrast, it is argued that "... as to the claims or holdings with respect to which defendants prevailed, those claims potentially affected the benefits of the nearly 2000 active Bank employees who participated in the [P]lan on or after 1993, which remained unchanged based upon the Court's rulings adverse to plaintiffs in its Judgment and Partial Judgment." (Rec. doc. 351, p. 9, n. 7).

Thereafter, the matter was concluded via settlement. Defendants have advised the Court that an estimate of the value of all amounts paid and payable to all participants in the Retirement Plan will aggregate approximately $1,439,182.00, calculated as the sum of the following amounts:

1. $502,531.00, representing single sum payments to participants who retired between July 1, 1988 and December 31,

1992 (including benefits in the principal amount of $333,943.00 and accrued interest in the amount of $211,917.00);

2. $157,453.00, representing the present value of prospective monthly benefit increases for participants who retired between July 1, 1988 and December 31, 1992;[2]

3. $496,673.00, representing single sum payments to participants credited with more than 40 years of service; and

4. $282,525.00, representing the present value of prospective monthly benefit increases for participants credited with more than 40 years of service.[3]

(Rec. doc. 331, pp. 12-13).

The Court is hard-pressed to believe that the time that plaintiffs' counsel expended in this matter would have been less had the issues which were dismissed not been in the litigation in the first instance. The same can be said for the issues on which defendants contend that they prevailed. The Court notes that this litigation was filed in 1994. Changes to the ERISA plan in question occurred following the filing of suit and reasonably can be said to have occurred as a result of plaintiffs' efforts, whether or not those changes were specifically addressed in the

---

[2] The Bank notes that the aggregate monthly benefit increase for all participants is $1,415.00. Present value was calculated assuming that all participants are age 80 and that all participants are married to a spouse who is also age 80. Using the joint and last survivor annuity tables included in Section 72 of the Internal Revenue Code, the calculation assumes that monthly payments will continue for 13 years. The Plan's interest rate of 5.5% for lump sum payments was used.

[3] The Bank further notes that the aggregate monthly benefit increase for all participants is $2,539.00 and the present value of same was determined as described in the prior footnote.

settlement documents.  For example, the so-called 1993 Plan, notice for which was found to be sufficient, was actually executed in 1995, subsequent to the filing of suit, and made retroactive to the earlier date.  As argued by defense counsel, "2,000 active Bank employees" participated in the Plan on or after the retroactive date to which this 1995 amendment applied.  Therefore, based upon materiality, the Court declines to reduce plaintiffs' fees as suggested by this argument.

Second, the defense argues that approximately 242.75 hours of time included in Mr. Bruno's billing records are errors related to software problems and/or the failure to properly review invoices prior to their submission for reimbursement. More specifically, the entries in question are marked with the letter "A" on the exhibit attached to the defense's post-hearing memorandum; the breakdown on the duplication is as follows:

| | | |
|---|---|---|
| Joe M. Bruno: | 51.75 | hours |
| David Scalia: | 125.00 | hours |
| Anthony Irpino: | 1.00 | hour |
| Stephanie Bruno: | 65.00 | hours |
| Total: | 242.75 | hours |

(Rec. doc. 351-1, p. 1).

Defendants have identified on Exhibit A certain billing entries pertaining to Mr. Bruno and Mr. Scalia that are identically repeated by the same timekeeper, immediately after the original entry and on the same date.  For example, on May 10, 2002, Mr. Bruno recorded 2.0 hours for "Fax Re: Redraft of the proposed

9

letter to Jane Armstrong; fax from Peter Butler re same." (Rec. doc. 351-2, p. 11). On that same date there is an exact duplication of the same information in Mr. Bruno's time sheets. (Rec. doc. 351-2, p. 12). The Court has verified from the billing records presented that additional duplications occurred commencing May 10, 2002 through May 21, 2004, as argued by defense counsel. Mr. Bruno's time should thus be reduced by 28.75 hours based upon such duplications.

Mr. Bruno's compensable time will also be reduced by another 8 hours based on the following:

1. March 10, 2004 entry for one hour's billable time for a telephone call with a special master when there was no special master in this case.

2. March 11, 2004 entry for one hour's billable time for drafting correspondence to individuals who were not involved in this case.

3. July 17, 2007 entry for two hour's billable time for receipt and review of a memo to Allstate Ins. Co. when Allstate was not involved in this litigation.

4. November 12, 2004 entry for four hours of time to "prepare Dunn Strotive" when there is no suggestion that he was involved in this case.

Therefore, Mr. Bruno's time will be reduced by a total of 36.75 hours for the reasons noted above.

In addition, as argued by the defense, the billing software used by Mr. Bruno simultaneously billed identical entries to several different timekeepers on the same date. For example, on January 17, 2003, Mr. Bruno logged 1.0 hour of time with the

notation "letter from Pete Butler re: letter from Jane Armstrong about settlement offer". (Rec. doc. 351-2, p. 16). On that same date, both David Scalia and Stephanie Bruno logged the exact same amount of time with a verbatim notation for the work performed which matches that of Mr. Bruno. (Rec. docs. 351-3, p. 22; 351-4, p. 13). The Court notes that, indeed, all of the time logged by Stephanie Bruno falls into this same category. Both she and Mr. Bruno have the exact same entries, explained in exactly the same fashion, although in some instances the amount of time which Stephanie Bruno logs is less than that of Mr. Bruno.

As to Mr. Scalia, 44.50 hours fall into the above category and should be deleted from his fee request. In addition, there is a notation for 75 hours of work on one calendar date, February 17, 1999, an obvious impossibility which must also be deleted from Mr. Scalia's fee request. (Rec. doc. 351-3, p. 16). Accordingly, a total of 119.50 hours will be subtracted from Mr. Scalia's compensable time. As to Stephanie Bruno, all of her time, a total of 65 hours, will be deleted from the fee request based upon the duplication as noted above.

Defendants have argued that the time of Anthony Irpino should be reduced by 1.0 hour based upon some type of duplication. However, the Court cannot verify the basis for the duplication and, therefore, declines to make a reduction based on same.

Third, defendants argue that time performed which relates to

11

Mr. Bruno's suspension from practice in this court cannot be recovered. The entries in question are marked by defendants with the letter "B" on the exhibits attached to their post-hearing memorandum. In this regard, defendants seek to have the following time deleted from the fee request:

| | |
|---|---|
| Joe M. Bruno | 2.75 hours |
| David Scalia | 2.75 hours |
| Anthony Irpino | 1.50 hours |
| Les A. Martin | 1.10 hours |
| | |
| TOTAL | 8.10 hours |

It is defendants' contention that these time entries relate to Mr. Bruno's withdrawal and re-enrollment in this matter, all necessitated by his suspension. The Court certainly agrees that such time should not be charged to the defense and has verified that the time expended by Messrs. Scalia, Irpino, and Martin listed above does, in fact, pertain to Mr. Bruno's suspension. Those hours will be deleted from the fee request. But, as to the 2.75 hours of Mr. Bruno's own time marked "B" on the defense exhibit, it is not readily apparent that same does pertain to the suspension and, therefore, the Court declines to delete these hours.

Fourth, defendants have identified time spent by the Cossich firm aggregating approximately 277.5 hours which the defense contends should be excluded. These are marked "C" on the exhibits attached to defendants' post-hearing memorandum. Defendants note that the Cossich firm represented certain named plaintiffs and others in unrelated age discrimination claims against the Bank

12

which should not form part of the current fee request.

Collette Ranatza, an associate with the Cossich firm, submitted 213.6 hours of time, yet Ms. Ranatza was not counsel of record in this matter, attended no hearings or depositions, participated in no telephone conferences, and failed to attend any mediations or settlement conferences.  The defense urges that Ms. Ranatza devoted 135.7 hours to contemporaneous discrimination cases involving the named plaintiffs in this litigation and billed 20.5 hours to attend five depositions in this case where none of the court reporters included her in the list of counsel who appeared. The defense has questioned other items of Ms. Ranatza's time and argues that, since over 80% of her time should be considered unreliable, the remainder of her time is as well and, therefore, that it should all be disregarded.

As to the hours identified as "C" pertaining to Mr. Martin and Ms. Ranatza, the Court cannot tell definitively whether defendants' argument is accurate or not.  The time entries are not specific as to whether counsel were dealing with discrimination litigation or something else.  However, Mr. Cossich did acknowledge at the evidentiary hearing that his firm represented individuals in discrimination suits against the Bank during the relevant time period. (Trans. of June 18, 2009, pp. 144-146).  The Court notes that counsel are far more familiar with this litigation than is the undersigned when it comes to other matters which might have been

13

pending contemporaneously with this one.  The Court further notes that plaintiffs' counsel have not filed any type of supplemental memorandum disputing or challenging  the accuracy of defendants' arguments.  Therefore, the Court accepts defendants' argument that 277.5 hours should be deleted from the fee request as sought.

Fifth, citing Peterson v. Continental Casualty Co., 282 F.3d 112, 121 (2nd Cir. 2002) and Cavaretta v. Entergy Corp. Co.'s Benefits Plus Long Term Disability Plan, 2005 WL 1038532 at *2-3 (E.D. La. Apr. 29, 2005), defendants argue that time spent during the conduct of the administrative proceedings is not recoverable. On this point defense counsel has identified the following hours as excludable:

| | |
|---|---|
| Joe M. Bruno | 42.75 hours |
| David Scalia | 4.75 hours |
| Amy Childress | 21.50 hours |
| Les A. Martin | 278.65 hours |
| Phil Cossich | 9.75 hours |
| TOTAL | 357.40 hours |

The record reflects that this litigation was closed between November 19, 1996 and November 24, 1997 to allow plaintiffs to exhaust administrative remedies.  (Rec. docs. 132, 164).  The time entries which defendants seek to have excluded, marked "D" on the exhibits attached to defendants' memorandum, are for time logged during this period.  While the Court has the discretion to award fees and costs incurred during a court-ordered remand, Peterson,

14

282 F.3d at 122, it would be inappropriate to do so here because administrative remedies should have been exhausted before suit was filed. 29 U.S.C. §1133. Accordingly, all 357.4 hours will be deleted from the fee request.

Sixth, the defense has identified 220.3 hours expended by plaintiffs' counsel for coming "up to speed" on the case which should be excludable.  Much of this time relates to entries by Mr. Butler and his associates in connection with learning the facts of the case.  Marked as "E" on defendants' addenda to the post-hearing memorandum, the hours for which exclusion is sought are as follows:

| | |
|---|---|
| Peter Butler | 33.00 hours |
| Peter Butler, Jr. | 132.10 hours |
| Richard Passler | 16.70 hours |
| Sarah Ney | 9.50 hours |
| Les A. Martin | 5.50 hours |
| Phil Cossich | 13.00 hours |
| Anthony Irpino | 10.50 hours |
| | |
| TOTAL | 220.30 hours |

The Court agrees with the defense that time spent reviewing pleadings, motions, briefs, depositions, and other documents previously filed in order to come "up to speed" cannot be recovered and should not be part of the lodestar.  In re Cahill, 428 F.3d 536, 542 (5th Cir. 2005).  Indeed, many of the entries which the defense has singled out for exclusion do, in fact, involve review of existing documents in the case.  Absent a further explanation from plaintiffs' counsel as to why those  entries should not be removed, the Court concurs with defendants' arguments in this

regard.

Seventh, defendants contend that 46.75 hours of support staff time submitted by Mr. Bruno should be deducted from the lodestar amount. Defense counsel notes that Mr. Bruno testified that this time relates to clerical work performed by non-paralegal staff. (Tr. 1, pp. 56-6, 14). Fees for non-paralegal staff are not recoverable under ERISA, as the services they perform are part of ordinary office overhead. Jackson v. Capital Bank & Trust Co., 1994 WL 118322 at *16 (E.D. La. March 30, 1994). Other than this, the defense does not contest the 245 hours of paralegal time submitted or the hourly rate of $85.00 per hour which is sought. In short, $16,851.25 in paralegal time is acknowledged by the defense to be reasonable.

By way of the following chart, defendants have summarized the number of hours which, it is argued, are totally excludable from the lodestar amount. In summary, defendants argue that plaintiffs began their fee application claiming 5,380.40 hours. Of these, defendants argue that not less than 1,282.30 hours, or a 30% reduction, should be disallowed as a matter of law because of plaintiffs' alleged limited success as a prevailing party, a position with which the Court does not agree. Defendants have further argued that an aggregate of 1,106.05 hours cannot be considered due to billing errors and other applicable legal authority. Defendants have thus summarized as follows the time

16

they feel should be initially excluded from plaintiffs' fee request:

| Attorney | Claimed Hours | Hours Subject to Reduction | Adjusted Hours | 30% Reduction | Hours Actually Subject to Lodestar |
|---|---|---|---|---|---|
| J. Bruno | 729.65 | 97.25 | 632.40 | 189.70 | 442.70 |
| Scalia | 348.25 | 132.50 | 215.75 | 64.70 | 151.00 |
| S. Bruno | 82.50 | 65.00 | 17.50 | 5.25 | 12.25 |
| Irpino | 152.25 | 13.00 | 139.25 | 41.75 | 97.50 |
| Childress | 38.50 | 21.50 | 17.00 | 5.10 | 11.90 |
| Martin | 2,260.80 | 349.15 | 1,911.65 | 573.50 | 1,337.70 |
| Cossich | 514.30 | 22.75 | 491.55 | 147.50 | 344.00 |
| Ranatza | 213.60 | 213.60 | 0.00 | 0.00 | 0.00 |
| Butler, Sr. | 169.35 | 33.00 | 136.35 | 40.90 | 95.45 |
| Butler, Jr. | 572.85 | 132.10 | 440.75 | 132.20 | 308.55 |
| Passler | 215.60 | 16.70 | 198.90 | 59.70 | 139.20 |
| Ney | 26.35 | 9.50 | 16.85 | 5.10 | 11.75 |
| R. Taylor | 26.00 | 0.00 | 26.00 | 7.80 | 18.20 |
| Preston | 3.00 | 0.00 | 3.00 | .90 | 2.10 |
| Kreller | 6.00 | 0.00 | 6.00 | 1.80 | 4.20 |
| Sumich | 4.00 | 0.00 | 4.00 | 1.20 | 2.80 |
| LeBlanc | 3.00 | 0.00 | 3.00 | .90 | 2.10 |
| B. Taylor | 14.40 | 0.00 | 14.40 | 4.30 | 10.10 |
| **Totals** | 5,380.40 | (1,106.05) | 4,274.35 | (1,282.30) | 2,991.50 |

As to these arguments, the Courts makes the following adjustments, agreeing in part with defendants' position, and will delete hours from the lodestar as follows:

| Attorney | Claimed Hours | Hours Subject to Reduction | Adjusted Hours | 30% Reduction | Hours Actually Subject to Lodestar |
|---|---|---|---|---|---|
| J. Bruno | 729.65 | 79.50 | 650.15 | -0- | 650.15 |
| Scalia | 348.25 | 127.00 | 221.25 | -0- | 221.25 |
| S. Bruno | 82.50 | 65.00 | 17.50 | -0- | 17.50 |
| Irpino | 152.25 | 12.00 | 140.25 | -0- | 140.25 |
| Childress | 38.50 | 21.50 | 17.00 | -0- | 17.00 |
| Martin | 2,260.80 | 349.15 | 1,911.65 | -0- | 1,911.65 |
| Cossich | 514.30 | 22.75 | 491.55 | -0- | 491.55 |
| Ranatza | 213.60 | 213.60 | 0.00 | -0- | 0.00 |
| Butler, Sr. | 169.35 | 33.00 | 136.35 | -0- | 136.35 |
| Butler, Jr. | 572.85 | 132.10 | 440.75 | -0- | 440.75 |
| Passler | 215.60 | 16.70 | 198.90 | -0- | 198.90 |
| Ney | 26.35 | 9.50 | 16.85 | -0- | 16.85 |
| R. Taylor | 26.00 | 0.00 | 26.00 | -0- | 26.00 |
| Preston | 3.00 | 0.00 | 3.00 | -0- | 3.00 |
| Kreller | 6.00 | 0.00 | 6.00 | -0- | 6.00 |
| Sumich | 4.00 | 0.00 | 4.00 | -0- | 4.00 |
| LeBlanc | 3.00 | 0.00 | 3.00 | -0- | 3.00 |
| B. Taylor | 14.40 | 0.00 | 14.40 | -0- | 14.40 |
| **Totals** | 5,380.40 | (1,081.80) | 4,298.60 | -0- | 4,298.60 |

In addition, defendants seek further reduction of plaintiffs' fees for failure to exercise billing judgment for which an across-the-board cut is suggested.  The defense notes that, during the evidentiary hearing, Messrs. Bruno, Martin, and Butler acknowledged that they had not written off any time from the fee submission for which reimbursement is sought.  Mr. Cossich testified that he did, in fact, write some time off but was unable to document what specific hours were written off as unproductive, excessive, or redundant.  Saizan v. Delta Concrete Products Co., Inc., 448 F.3d 795, 799 (5th Cir. 2006).  Accordingly, defense counsel invites the Court to exercise its own judgment in determining what should have been written off.

Additionally, it is argued that researching basic ERISA law is not all properly subject to recovery in a fee petition.  Counsel note that both Mr. Cossich and Mr. Martin had no prior experience with ERISA before becoming involved in this matter, requiring them to learn this area of the law in order to "come up to speed" to properly represent their clients.  Mr. Bruno also had little, if any, experience with ERISA before this litigation.  Defendants contend that they should not have to pay for this learning curve and that the Court should significantly reduce counsel's compensable time expended in unnecessary research to learn basic ERISA law.

It is further argued that plaintiffs cannot recover for the services of multiple partners and multiple attorneys. The defense notes that plaintiffs seek to recover time for a total of 18 attorneys, 8 of whom should purportedly be considered as partners. Specifically, it is argued that Mr. Cossich was initially engaged to represent all plaintiffs. He and his associates recorded a total of 3,010 hours through 2008 in that process. According to Mr. Cossich, Mr. Bruno was engaged "for his class action expertise" in 1994, which resulted in an added 1,385 hours of time billed by Mr. Bruno and his firm. Yet by stipulation the issue of class certification was resolved when less than 40 hours of time had been recorded by the Bruno firm. Indeed, no class was ever certified herein. Messrs. Butler were engaged because of their experience in ERISA but this did not occur until 2001 and it is unclear why their expertise was necessary at this point in the litigation. Counsel argue that there has been unnecessary duplication of effort with this many attorneys involved in the case.

By comparison, however, the Court notes that defense counsel billed a total of 3,190.5 hours to the file.[4]/ At least 7 partners

---

[4]/  The Court notes that there has been some confusion over the number of hours defense counsel devoted to this litigation. The Court sought from defense counsel a breakdown on the hours each employee of Phelps Dunbar had addressed to the matter. While the initial memos filed herein identified 3,190.5 hours spent, the letter received by the Court outlining time expended revealed 4,131.19 hours devoted to the matter.

The Court then asked for an explanation for the discrepancy noted. When a further explanation for this discrepancy was

and 13 associates, 6 paralegals, and multiple court runners logged time on this matter at Phelps Dunbar. Regardless of the initial reason that Mr. Bruno and his firm and Messrs. Butler and their associates became involved, the number of billable hours that resulted, while higher than that of defendants, is not per se unreasonable based solely on the staffing pattern.

Defendants have also identified alleged improper billing practices which should result in further reduction of plaintiffs' fee reimbursement. Specifically, the defense argues that plaintiffs cannot recover extraordinary time for the performance of routine tasks, multiple examples of which are cited in defendants' memorandum. Additionally, it is argued that lack of sufficient detail in billing should result in further reduction of time as should block billing of time. Unreasonable time conferring with clients should be reduced as well.

As to the aforementioned arguments, defense counsel suggests that an across-the-board cut in some percentage is appropriate.

One further item for which reduction is appropriate is suggested, *i.e.*, that no recovery should be permitted for time billed by attorneys who performed little or no substantive work. This reduction, rather than with an across-the-board percentage,

---

furnished to the Court, it appears that a glitch in Phelps' computer system erroneously added 940.69 hours into billing and that these hours were not, in fact, attributable to this file.
The Court accepts counsel's explanation for this discrepancy.

should be handled by discrete time deductions, according to defendants' argument. Defendants have identified 128 hours submitted by Mr. Bruno for time expended by counsel in his firm who fall into this category. Specifically, the hours logged by Stephanie Bruno[5] are characterized as monitoring activity without substantive work. Roz Taylor, Bob Preston, and Stephen Kreller logged at total of 36 hours which, it is argued, constitute the reviewing of documents prepared by others and/or attending meetings which were not well explained in the billing entries.

Defense counsel identifies 21.4 hours submitted by Mr. Cossich for firm members Darren Sumich, W.J. LeBlanc, Jr., and Brandon J. Taylor which includes block-billed time, tasks insufficiently described, and unnecessary research.

Based upon the foregoing arguments, defendants suggest a further reduction to plaintiffs' hours as follows:

| Attorney | Hours Subject to Lodestar | (%) | Compensable Hours | Reasons for Reduction |
|---|---|---|---|---|
| J. Bruno | 442.70 | 0% | 442.70 | NA |
| Scalia | 151.00 | 0% | 151.00 | NA |
| S. Bruno | 12.25 | 100% | 0.00 | No substantive work |
| Irpino | 97.50 | 0% | 97.50 | NA |

---

[5] The Court notes that an adjustment to Ms. Bruno's hours has already occurred and, therefore, a further deduction for the complete amount of her time is not appropriate as it would result in double counting of deductible time.

| Attorney | Hours Subject to Lodestar | (%) | Compensable Hours | Reasons for Reduction |
|---|---|---|---|---|
| Childress | 11.90 | 0% | 11.90 | NA |
| Martin | 1,337.70 | 25% | 1,003.27 | Block-billing; impermissible time entries; excessive research; excessive client consultation; duplicative work; extraordinary time |
| Cossich | 344.00 | 15% | 292.40 | Block-billing; excessive research; duplicative work; excessive client consultation; multiple partners performing same tasks |
| Ranatza | 0.00 | NA | 0.00 | NA |
| Butler, Sr. | 95.45 | 15% | 81.13 | Duplicative work; excessive partners |
| Butler, Jr. | 308.55 | 15% | 262.26 | Duplicative work; excessive partners |
| Passler | 139.20 | 15% | 118.32 | Duplicative work; excessive partners |
| Ney | 11.75 | 0 | 11.75 | NA |
| R. Taylor | 18.20 | 100% | 0.00 | No substantive work |
| Preston | 2.10 | 100% | 0.00 | No substantive work |
| Kreller | 4.20 | 100% | 0.00 | No substantive work |
| Sumich | 2.80 | 100% | 0.00 | No substantive work |
| LeBlanc | 2.10 | 100% | 0.00 | No substantive work |
| B. Taylor | 10.10 | 100% | 0.00 | No substantive work |
| **Totals** | 2,991.50 | | 2,472.23 | |

As the Court does not concur with defendants' calculation of
the lodestar, the further reductions which the Court allows will be
based on different hours against which reductions will be made.
The Court does, however, concur that a percentage reduction, as to
certain counsel, is in order as sought by defendants.  Green v.
Administrators of the Tulane Educational Fund, 284 F.3d 642, 662
(5th Cir. 2002).  The Court accordingly makes the following
adjustments:

| Attorney | Hours Subject to Lodestar | (%) | Compensable Hours | Reasons for Reduction |
|---|---|---|---|---|
| J. Bruno | 650.15 | 0% | 650.15 | N/A |
| Scalia | 221.25 | 0% | 221.25 | N/A |
| S. Bruno | 12.25 | 100% | 0.00 | No substantive work |
| Irpino | 140.25 | 0% | 140.25 | NA |
| Childress | 17.00 | 0% | 17.00 | N/A |
| Martin | 1,911.65 | 10% | 1,720.48 | Block-billing; excessive research; excessive client consultation; duplicative work. |
| Cossich | 491.55 | 0% | 491.55 | N/A |
| Ranatza | 0.00 | NA | 0.00 | N/A |
| Butler, Sr. | 136.35 | 10% | 122.71 | Duplicative work; excessive partners |
| Butler, Jr. | 440.75 | 10% | 396.67 | Duplicative work; excessive partners |
| Passler | 198.90 | 10% | 179.01 | Duplicative work; excessive partners |
| Ney | 16.85 | 0 | 16.85 | N/A |
| R. Taylor | 26.00 | 100% | 0.00 | No substantive work |
| Preston | 3.00 | 100% | 0.00 | No substantive work |

| Attorney | Hours Subject to Lodestar | (%) | Compensable Hours | Reasons for Reduction |
|---|---|---|---|---|
| Kreller | 6.00 | 100% | 0.00 | No substantive work |
| Summich | 4.00 | 100% | 0.00 | No substantive work |
| LeBlanc | 3.00 | 100% | 0.00 | No substantive work |
| B. Taylor | 14.40 | 100% | 0.00 | No substantive work |
| Totals | 4,298.60 | | 3,955.92 | |

By way of further explanation, the Court notes that defendants billed 3,190.5 hours on this file. With these adjustments, plaintiffs' compensable hours are still somewhat higher than the time which the defense devoted to the same issues. The Court further notes that plaintiffs had multiple clients to deal with while the defense had a sophisticated corporate client(s) and, therefore, plaintiffs' counsel can be expected to devote more time to client interaction and run up significant time on the file as a result. The Court has seen nothing in the conduct of this litigation to lead it to believe that plaintiffs' counsel prolonged this litigation or "churned" the file in any fashion. Nor does the Court believe that plaintiffs' counsel did anything to cause the defense to incur additional time in handling this matter.

A 10% reduction was allowed to certain counsel's hours largely because of block-billing, excessive research, excessive client consultation, and possible duplication of effort between counsel. With the adjustments made herewith, Mr. Martin, who handled most of the time on the file for plaintiffs, and Ms. Alexander, who

functioned in the same capacity for the defense, have compensable hours close enough in number to be considered reasonable.

Having thus determined a proper lodestar amount, the hourly rates sought by counsel must next be determined.  Defense counsel points out that fees should be calculated at prevailing market rates in the relevant community for similar services by attorneys of reasonably comparable skills, experience, and reputation.  Blum v. Stevenson, 465 U.S. 886, 895, 104 S.Ct. 1541, 1547 (1984); Walker v. U.S. Dept. of Housing and Urban Development, 99 F.3d 761, 770 (5th Cir. 1996).  Defendants further argue that the fee applicant "... bears the burden of producing satisfactory evidence that the requested rate is aligned with prevailing market rates." Jackson v. Scott, 2008 WL 5216225 at *2 (E.D. La. Dec. 11, 2008). Satisfactory evidence of reasonableness necessarily includes an affidavit of the attorney performing the work and information of rates actually billed and paid in similar lawsuits.  Blum, 465 U.S. at 895 n. 11, 104 S.Ct. at 1547 n. 11.  Defendants then argue that plaintiffs have not met their burden of proof through the submission of only the affidavit of Patrick Vance who is not an ERISA litigator.

The defense further notes that the testimony of Bruce Spizer is unrebutted.  He opined that the hourly rate for ERISA litigators between 1994 and 1995 in large firms was approximately $175.00 per hour; between 1995 and 2000 that rate was between $185.00 and

26

$215.00 per hour.  Between 2000 and 2005, ERISA litigation rates were between $220.00 and $260.00 per hour; from 2005 through 2007, those rates were between $270.00 and $300.00 per hour.  Counsel further notes that this information is further supported by the affidavits of Katherine Conklin, a partner at McGlinchey Stafford, and Jane Armstrong, one of defendants' own attorneys in this litigation.

Defendants further argue that plaintiffs' counsel cannot be considered as experienced ERISA litigators.  Therefore, the defendants argue, they "... cannot properly be deemed to possess the skill, reputation, or experience to support the rates afforded to those ERISA litigators, as a matter of law." (Rec. doc. 351, p. 34)(citing Norman v. Housing Auth. of City of Montgomery, 836 F.2d 1292 (11th Cir. 1988)).  They point out that, prior to handling this matter, neither Mr. Cossich, Mr. Bruno, nor Mr. Martin had handled any ERISA matters.  Indeed, Mr. Martin had only recently graduated from law school when this matter commenced.  Mr. Peter Butler, Jr. testified that he had prior experience related to claims by "retirees or potential retirees and also claims against plans." (Trans. of June 19, 2009, p. 81).  However, he could not identify how many such claims he had handled. (Id. at p. 82).

Accordingly, defendants make the following suggestions as to the appropriate hourly rates which should be awarded herein:

| Attorney | Status (Rate Purposes) | Hourly Rate | Reasons |
|---|---|---|---|
| Bruno | Partner | $250 | Rates currently awarded in Eastern District |
| Scalia | Partner | $225 | Rates currently awarded in Eastern District |
| rpino | Associate | $150 | Current hourly rate for associates |
| Childress | Associate | $150 | Current hourly rate for associates |
| Martin | Associate | $150 | Current hourly rate for associates |
| Cossich | Partner | $225 | Rates currently awarded in Eastern District |
| Butler, Sr. | Partner | $315 | Highest rate charged by Mr. Rosenberg |
| Butler, Jr. | Partner | $225 | Rates currently awarded in Eastern District |
| Passler | Partner | $225 | Rates currently awarded in Eastern District |
| Ney | Associate | $150 | Current hourly rate for associates |

In support thereof, defendants cite the Court to the following case law whereby hourly rates were awarded:

Dinet v. Hydril Co., 2006 WL 3904991 at *7 (E.D. La. Nov. 22, 2006). In this race discrimination case, Magistrate Judge Knowles awarded Lafitte attorney Larry S. Cox fees of $150 per hour. Although Mr. Cox had at that time practiced law for 7 years, he had never worked on another employment discrimination case. "A review of cases decided in this Court reveals that the hourly rate of $175 is the median range of the spectrum for seasoned employment discrimination attorneys, even for work performed post-Katrina. The Court has determined that the hourly rate of $150 more closely approximates the prevailing market rates in this community for similar services by attorneys who have skills, experience, and reputation reasonably comparable to that of plaintiff's counsel in this case."

Decorte v. Jordan, 2005 WL 1431699 (E.D. La. May 26, 2005), aff'd, 497 F.3d 433 (5th Cir. 2007). The jury trial in this well-publicized reverse race discrimination case brought by 43 plaintiffs against the former Orleans Parish District Attorney lasted three and one-half weeks. In 2006, Judge Duval, on the recommendation of Magistrate

Judge Shushan, awarded plaintiffs' counsel fees at a blended rate of $213 per hour, including fees of $215 per hour for Richard Leefe and Clem Donelon for their work in the district court. See Decorte, Rec. doc. 407 (Nov. 14, 2005) at p. 20 (Magistrate Judge Shushan's Report and Recommendation) and Rec. doc. 432 (January 27, 2006) (Judge Duval's order adopting the Recommendation). The district court awarded fees for 3,311 hours of attorney time.

Ducote Jax Holdings, L.L.C. v. Bank One Corp., 2007 WL 4233683 (E.D. La. Nov. 28, 2007), affirmed in part, reversed in part on other grounds, 335 Fed.Appx. 392 (5th Cir. 2009)(unpublished). In this civil RICO case, Judge Fallon awarded New Orleans attorney Lynn E. Swanson fees of $175 per hour, based on her 14 years experience.

St. Stephen's Missionary Baptist Church v. Taylor, 2008 WL 4057162 (E.D. La. Aug. 29, 2008). This case concerned a failed construction project and fraudulent bond. On the recommendation of Magistrate Judge Knowles, Judge Berrigan awarded fees the a rate of $150 per hour to David J. Krebs, an attorney of 26 years' experience and a founding partner of the New Orleans firm of Krebs, Farley & Pelleteri. Id. at * 3.

Orthopedic Practice, LLC v. Hartford Casualty Insurance Co., 2008 WL 1712300 at *3 (E.D. La. April 8, 2008). Magistrate Judge Roby awarded Martin Sadler, a partner in the Houston firm of Martin, Disiere, Jefferson & Wisdom, LLP with 13 years' experience, fees at an hourly rate of $195.

Boudreaux v. U.S. Flood Control Corp., 2009 WL 911008 at *3 (E.D. La. March 27, 2009). In this real estate trespass case, Magistrate Judge Roby awarded plaintiff's counsel, Regel Bisso, fees of $200 per hour. Mr. Bisso had handled previous trespass cases and had been accepted in state court as an expert in real estate law.

Jackson v. Scott, 2008 WL 5216225 (E.D. La. Dec. 11, 2008). Magistrate Judge Roby awarded fees to Andrea Wilkes at an hourly rate of $200 in this fair housing case. Ms. Wilkes had practiced extensively in the areas of civil rights, labor and employment law for 16 years.

Bodin v. Butler, 2008 WL 5122354 (E.D. La. Dec. 4, 2008). Judge Vance awarded fees to attorney Gilbert R. Buras,

Jr. for his work in the breach of contract case <u>at $200 per hour</u>.  At the time of the award, Mr. Buras had practiced law in New Orleans for 28 years.

<u>First Colony Life Ins. Co. v. Kreppein</u>, 2007 WL 1832133 (E.D. La. June 25, 2007).  In this interpleader suit involving the proceeds of a life insurance policy, Judge Zainey awarded New Orleans attorney Virginia Roddy fees between <u>$190-$195 per hour</u> for work performed between 2005 and 2007.  At the time of the award, Ms. Roddy, a founding partner of the Preaus Roddy firm, had 28 years of experience in insurance benefits litigation.

<u>Reyes v. Spur Discount Store No. 4</u>, 2007 WL 2571905 at *3 (E.D. La. Aug. 31, 2007).  On the recommendation of Magistrate Judge Knowles, Judge Lemmon awarded New Orleans attorney Louis R. Koerner, Jr. <u>fees at the rate of $200 per hour</u>, despite his 40 years of legal experience and his customary billing rate of $250.

<u>Downey v. Strain</u>, 2006 WL 1581234 at *4-5 (E.D. La. June 5, 2006), <u>aff'd</u>, 510 F.3d 534 (5th Cir. 2007), Magistrate Judge Shushan awarded <u>fees of $225 per hour</u> to Hammond attorney Thomas J. Hogan, Jr., who had 24 years of experience, 19 of which focused on employment and civil rights law, the areas of law involved in the case.  Judge Shushan also awarded Robert E. McKnight, Jr. <u>fees of $175 per hour</u>, based on his 13 years of practice in employment and civil rights law.

<u>Prime Insurance Syndicate, Inc. v. Jefferson</u>, 547 F.Supp.2d 568, 579 (E.D. La. 2008).  Judge Feldman awarded attorney Randall A. Smith of Smith & Fawer, LLP fees at the <u>rate of $265 per hour</u>.  At that time, Mr. Smith had 25 years experience, primarily in complex litigation, and had practiced law at Stone Pigman for 11 years.  The Court also awarded <u>fees of $200 per hour</u> to two other attorney from the Smith & Fawer firm who had practiced for 11 and 15 years.

<u>Sanders v. Washington Mutual Home Loans, Inc.</u>, 2009 WL 365683 *7 (E.D. La. Feb. 10, 2009).  In this Fair Debt Collection Practices Act case, Judge Engelhardt awarded fees to New Orleans attorney Kevin Schoenberger at the <u>rate of $250 per hour</u>, noting that the rate was "within the high end of the range of prevailing market rates for lawyers with comparable experience and expertise in litigation of this type."  Mr. Schoenberger, who was

admitted to practice in Louisiana in 1972, had requested fees of $325 per hour.

<u>Picard v. St. Tammany Parish Hospital</u>, 2009 WL 911003 at *3 (E.D. La. March 27, 2009). In this employment discrimination case, Magistrate Judge Roby awarded Charles Hollis <u>fees of $250 per hour</u>, despite his regular hourly billing rate of $295 per hour. At the time of the award, Mr. Hollis had practiced labor and employment law in New Orleans with the Kullman Firm for 28 years.

The Court does, however, note that none of these cases appear to be ERISA litigation and defendants do not otherwise so contend. These cases were cited for the proposition that, if ERISA rates were not awarded, the resolution of these above cited matters has value in determining what awards were made when dealing with other fee shifting statutes.

The Court has determined that the following hourly rates are appropriate:

| | |
|---|---|
| Joseph M. Bruno | 315.00 per hour |
| Peter Butler, Sr. | 315.00 per hour |
| Philip Cossich | 315.00 per hour |
| Peter Butler, Jr. | 250.00 per hour |
| Les Martin | 250.00 per hour |
| David Scalia | 250.00 per hour |
| Childress | 150.00 per hour |
| Irpino | 150.00 per hour |
| Ney | 150.00 per hour |
| Passler | 150.00 per hour |

The attorney in each firm who had the most experience has been given the highest rate, the same rate charged by Mr. Rosenberg for the defense. Although this is an ERISA matter, Mr. Rosenberg is not an ERISA specialist; yet defendants had no problem in paying his hourly rate. The Court is mindful that, in awarding fees, the

31

losing party should not be cast to pay fees at a rate which it would not have been responsible for paying its own counsel and, as noted earlier, the Bank paid Mr. Rosenberg's rate despite his not being an ERISA litigator, per se. In each firm the person who had significant responsibility for the file has been given the intermediary rate and the lowest rate has been awarded to those who may more properly be called junior associates.

The defendants have acknowledged that it is appropriate to award current rates in order to partially compensate plaintiffs' counsel for not being paid on a monthly basis as has the defense. Accordingly, the following constitutes the award of fees which the Court makes to plaintiffs' counsel based upon a lodestar calculation:

| | | | |
|---|---|---|---|
| Joseph M. Bruno | 650.15 | $315.00 | $204,797.25 |
| David Scalia | 221.25 | $250.00 | $ 55,312.50 |
| Stephanie Bruno | -0- | | |
| Irpino | 140.25 | $150.00 | $ 21,037.50 |
| Childress | 17.00 | $150.00 | $  2,550.00 |
| Les Martin | 1720.48 | $250.00 | $430,120.00 |
| Phil Cossich | 491.55 | $315.00 | $154,838.25 |
| Ranatza | -0- | | |
| Peter Butler, Sr. | 122.71 | $315.00 | $ 38,653.65 |
| Peter Bulter, Jr. | 396.67 | $250.00 | $ 99,167.50 |

| | | | |
|---|---|---|---|
| Passler | 179.01 | $150.00 | $ 26,851.50 |
| Ney | 16.85 | $150.00 | $ 2,527.50 |
| | **TOTAL** | | $1,035,855.65 |

However, given the fact that counsel have received no compensation whatsoever for a 15 year period nor have costs been tendered to this point, it is appropriate that this base award be enhanced in some fashion. A 20% enhancement will be awarded to plaintiffs' counsel to account for this inequity. It is highly unusual for litigation to continue for such a lengthy period and defendant, being a financial institution, knows better than most litigants that payment made in a delayed fashion is truly less than that paid on a monthly basis as their attorneys were compensated. Accordingly, it will be recommended that a total of One Million Two Hundred Sixty Three Thousand Two Hundred Forty Eight and 28/100 ($1,263,248.28) Dollars[6] be awarded to plaintiffs' counsel herein.

Lastly, defendants have identified certain costs for which plaintiffs seek reimbursement which defendants argue should be disallowed. Again, plaintiffs have not disputed defendants' arguments in this regard. However, the Court will go through same for the sake of completeness. Defendants do not dispute that $20,664.49 in costs are, in fact, due and owing to plaintiffs.

---

[6]/To the figure of $1,035,855.65, the sum of $16,851.25 in paralegal fees was added and then the multiplier applied to reach the ultimate figure.

Defendants first dispute the expert fees of Messrs. Heller and Flower.  Defendants have identified $15,509.37 in fees paid to Mr. Heller, itemized as follows:  $2,296.87 paid on March 29, 2005 by the Bruno Firm; $2,296.87 paid on April 6, 2005 by the Cossich Firm; $4,300.00 paid on May 14, 2002 by the Cossich Firm; and $4,318.75 paid on June 6, 2002 and $2,296.88 paid on April 12, 2005 by the Breazeale Firm.  An additional $3,195.00 has been identified as paid to Richard C. Flower.

Defendants have argued that, according to Supreme Court jurisprudence, "'absent contract or explicit statutory authority to the contrary,' a federal court may not shift expert witness fees." (Rec. doc. 351, p. 40)(quoting Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 439, 107 S.Ct. 2494, 2496 (1987)). Defendants further argue that ERISA does not authorize the recovery of such fees as costs. (Rec. doc. 351 at pp. 40-41)(citing Mizzell v. Provident Life & Accident Ins. Co., 32 Fed. Appx. 352 (9th Cir. 2002); Agredano v. Mutual of Omaha Companies, 75 F.3d 541, 544 (9th Cir. 1996); Holland v. Valhi, Inc., 22 F. 3d 968, 979 (10th Cir. 1994)).

As plaintiffs have not disputed this argument, an appropriate reduction in the costs sought will be made.

Secondly, defendants have identified $3,619.38 in mediation fees paid to the firm of Perry, Dampf, Watts, and Associates which, it is argued are not recoverable. (Rec. doc. 351, p. 41)(citing

<u>Cook Children's Medical Center v. New England PPO Plan of General Consolidated Management, Inc.</u>, 491 F.3d 266, 276 (5th Cir. 2007), <u>cert</u>. <u>denied</u>, 552 U.S. 1180, 128 S.Ct. 1223 (2008).  Of this amount, the Bruno Firm paid $904.84 on March 31, 2006 and $904.86 on December 4, 2006.  The Cossich Firm paid $904.84 on April 3, 2006 and the Breazeale Firm paid $904.84 on March 22, 2006.

As plaintiffs have not disputed these amounts, an appropriate reduction will be made.

Third, sums for rentals charged by Mr. Bruno are argued to be unrecoverable.  Specifically, Mr. Bruno paid $8,900.00 in rent to Baronne Properties which was charged back to the various plaintiffs in this litigation at a monthly rate of $200.00 per month from January, 1997 through November, 1999, except for August, 1999.  An additional charge of $2,100 was paid on November 22, 2004 for "rental of 6th floor".  Baronne Properties is apparently an entity owned by Mr. Bruno and two of his brothers.

Defendants note that Mr. Bruno explained that he:

> "had a separate class action litigation office that was completely separate and apart...located down the block.  And in order for us to organize the files and keep them together, we had a special space where we only contained the Whitney case.  We had little cubicles in that office.  It's on the corner of Baronne and Howard Avenue...[W]e divided it up in that way so we could keep all the files in one location. ... Because in this kind of litigation, the files get voluminous; and, as I said, it's necessary it's to the nature of how you get paid, you have to keep a record of all your expenses."

> (Trans. of June 18, 2009, pp. 53-54).

35

The Court notes that these expenses fall under the category of basic office overhead.  There being no jurisprudence cited by the plaintiffs to justify such a reimbursement, the Court declines to do so.

Lastly, some miscellaneous expenses have been identified as follows which defendants believe to be excludable from recoverable costs:

1.   $982.46 paid by the Bruno Firm on January 13, 1997 described as "Misc. Expense - Amann Business Systems (computers). Mr. Bruno testified that he "didn't recall what that's for." (Trans. of June 18, 2009, pp. 55-56).

2.   $2,368.57 paid by the Bruno Firm on November 30, 2004 for "copy cost-Choice Copy Service".  As there are no entries on the docket sheet between August 19, 2004 and June 22, 2005 and since plaintiffs have provided no details to justify such charges, defendants ask that they be disallowed.

3.   $100.00 paid by the Bruno Firm on November 14, 1996 for "Court Cost, Fred Dougherty".  Defendants argue that they have no information to indicate that this charge should pertain to this case.

4.   $300.00 paid by the Cossich Firm on August 2, 1994 for "miscellaneous expense-supply charges".  Defendants argue that this charge should be included in firm overhead and, therefore, excludable from recovery.

36

Again, as plaintiffs have not disputed these charges in any fashion, the Court cannot disagree with the defense as to their being disallowed.  An appropriate reduction will be made in the costs sought by plaintiffs based upon these arguments.

## RECOMMENDATION

For the foregoing reasons, IT IS RECOMMENDED THAT an award of attorneys' fees and paralegal fees, together with a multiplier, in the sum of One Million Two Hundred Sixty Three Thousand Two Hundred Forty Eight and 28/100 ($1,263,248.28) Dollars be awarded to plaintiffs' counsel herein.

IT IS FURTHER RECOMMENDED that plaintiffs be awarded costs in the amount of Twenty Thousand Six Hundred Thirty and 49/100 ($20,630.49) Dollars.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Services Auto. Assoc., 79 F.3d 1415 (5th Cir. 1996)(en banc).

New Orleans, Louisiana, this __9th__ day of __November__,

2010.

_____
ALMA L. CHASEZ
UNITED STATES MAGISTRATE JUDGE